<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| GENEROATH CO., LTD., and<br>BESTBLUE INC.,<br><br>                        *Plaintiffs*,<br><br>       v.<br><br>JAY MADAN, an individual,<br>BIOTOS THERAPEUTICS, INC., a<br>Delaware Corporation,<br>JOHN DOES (1-20) and<br>ABC CORPORATIONS (1-10)<br><br><br>                      *Defendants*. | Civil Action No. 24-4520<br><br><br>**OPINION**<br><br><br>May 19, 2026 |

**SEMPER**, District Judge.

**THIS MATTER** comes before the Court upon a Motion for Default Judgment and Sanctions filed by Plaintiffs Generoath Co., LTD. and Bestblue Inc. ("Generoath" and "Bestblue" or, together, "Plaintiffs") against Jay Madan and Biotos Therapeutics, Inc. ("Madan" and "Biotos" or, together, "Defendants") pursuant to Federal Rule of Civil Procedure ("Rule") 55(b)(2). (ECF 35-1, "Motion" or "Mot.") The Court has decided this Motion upon submission, without oral argument, pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons stated below, Plaintiffs' Motion is **DENIED WITHOUT PREJUDICE**.

## I.    <u>FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]</u>

This matter arises from Plaintiffs' claims of breach of contract, common law conversion, embezzlement, unjust enrichment, constructive trust, fraud or misrepresentation, corporation

---

[1] The facts and procedural history are drawn from the briefings (ECF Nos. 1, 3, 4, 5, 6, 10, 14, 22, 24, 25, 28, 34, 35) and documents integral to or relied upon by the briefings. *See In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). A district court may consider

dissolution pursuant to N.J. Stat. Ann. § 14A:12- 7(1)(c), replevin, fraudulent conveyance, and federal RICO, and now, breach of settlement, against Defendants. (ECF 1, "Complaint" or "Compl." ¶¶ 49-118; Mot. at 2-3.) Plaintiffs are Generoath, a biopharmaceutical company focused on the development of gene therapies for neurodegenerative diseases, and Bestblue, a biopharmaceutical investment company. (Compl. ¶¶ 12-13.) Generoath is a foreign corporation that is both organized under the laws of and maintains its principal place of business in South Korea. (*Id*. ¶ 1.) Bestblue is both organized under the laws of and maintains its principal place of business in Oregon. (*Id*. ¶ 2.) Defendant Madan is an individual domiciled in North Carolina. (*Id*. ¶ 3.) Defendant Biotos is a corporation incorporated in Delaware and headquartered in North Carolina. (*Id*. ¶ 4.)

In 2021, Generoath sought to expand its business operations by attracting investors to the United States. (*Id*. ¶ 14.) In October 2021, Generoath appointed an agent, Young Moon, to identify a U.S. business partner. (*Id*. ¶ 15.) Young Moon is based in New Jersey. (*Id*.) Young Moon contacted Madan and proposed the establishment of a U.S. subsidiary to facilitate investment, research, and development. (*Id*. ¶ 16.) On November 15, 2021, Young Moon and Madan met at the Marriot Hotel in Newark, New Jersey to discuss Generoath's new venture. (*Id*. ¶ 17.) At the meeting, Madan represented that he has "BD experience in global Big Pharma," experience in listing and exiting biotech ventures, and that he founded a biotech company called Innovate Biopharma. (*Id*. ¶ 18.) On May 25, 2022, representatives from Generoath met with Madan in Boston, Massachusetts, to discuss Generoath's research and development status. (*Id*. ¶

---

"exhibits attached to the complaint and matters of public record" as well as "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

20.)  Based on these discussions, the parties decided to establish Generoath's U.S. subsidiary, Biotos, by July 2022.  (*Id*. ¶ 21.)

Generoath offered Madan 10% equity in Biotos for his active role in the new venture.  (*Id*. ¶ 22.)   Madan requested a loan of $500,000.00 (which was later adjusted to $300,000 in total), and the parties discussed a licensing agreement from Generoath to the newly formed U.S. subsidiary and the composition of a board of directors.  (*Id*. ¶ 23.)  On July 15, 2022, Generoath and Madan executed a consultant agreement requiring Generoath to pay Madan $15,000 monthly in exchange for his assistance in creating Biotos.  (*Id*. ¶¶ 24-25.)  From July 2022 to April 2023, Generoath wired $15,000 monthly to Madan, totaling $150,000.  (*Id*. ¶¶ 26, 43.)  On August 4, 2022, Madan established Biotos as Generoath's U.S. subsidiary.  (*Id*. ¶ 27.)

On January 18, 2023, Generoath provided Biotos with a $249,000 loan.  (*Id*. ¶ 32.)  In February 2023, Bestblue wired Biotos an additional $51,000 loan under an agreement via email. (*Id*. ¶ 33.) In February 2023, Generoath's representative met with Madan in New York City to discuss progress in investor recruitment.  (*Id*. ¶ 34.)  Doubting Madan's contributions, Generoath suspended his consultancy payments pending a satisfactory report of his activities.  (*Id*. ¶ 35.)  By April 2023, Generoath demanded a detailed activity report from Madan, ceasing consultancy payments due to insufficient documentation.  (*Id*. ¶ 36.)  In July 2023, Madan proposed repaying the $249,000 loan and suggested modifications to the consultancy agreement.  (*Id*. ¶ 38.)  By November 2023, Generoath formally demanded repayment of the $249,000 loan, which Madan did not acknowledge. (*Id*. ¶ 39.)  In January 2024, Generoath and Bestblue reiterated their demand for loan repayment, receiving no response from Madan.  (*Id*. ¶ 40.)  Plaintiffs also allege Madan neglected to complete corporate documentation establishing that Biotos would be owned by certain

shareholders, including Generoath and Bestblue, and failed to issue stock certificates and other foundational documents. (*Id.* ¶¶ 28-29.)

As a result, Plaintiffs commenced this action against Defendants on April 3, 2024. (*See generally id.*) Defendant Madan was served with the Complaint and summons in this matter on April 22, 2024, and Defendant Biotos was served on April 26, 2024. (ECF 3; ECF 4.) After Defendants failed to respond to the Complaint, Plaintiffs petitioned the Clerk of the Court for an entry of default on May 21, 2024. (ECF 5.) The Clerk of the Court entered default against Defendants on May 22, 2024. (*Id.*) Defendant Madan then filed a Motion to Dismiss the Complaint for improper venue on May 22, 2024. (ECF 6, "Motion to Dismiss"). This Court denied Madan's Motion to Dismiss on October 11, 2024. (ECF 10.)

The parties entered into a settlement agreement on January 31, 2025. (ECF 22.) Defendants agreed to pay Plaintiff Generoath $200,000 by February 18, 2025, and the full judgment amount of $250,000 if they failed to meet that deadline. (ECF 22.) Defendants also agreed to pay Plaintiff Bestblue $50,000 by February 11, 2025. (ECF 22-1.) On February 10, 2025, the Court administratively terminated the case for 60 days pending consummation of the settlement, (ECF 21), and on April 15, 2025, the Clerk of the Court dismissed the case with prejudice. (ECF 24.) On May 15, having received no settlement payments from Defendants, Plaintiffs filed a Motion to Vacate the Order of Dismissal. (ECF 25.) The Court ordered Defendants to pay the entire settlement amount to Plaintiffs by July 8, 2025. (ECF 28.) After Defendants continuously failed to pay the settlement, the Court again ordered Defendants to pay the settlement by September 5, 2025. (ECF 34.) The Court further ordered that it would reopen the case and grant Plaintiffs leave to file a Motion for Default Judgment and Sanctions should Defendants fail to meet the September 5, 2025 deadline. (*Id.*) Defendants failed to meet the

4

September 5, 2025 deadline, and Plaintiffs filed the present Motion on September 12, 2025.  (ECF 35.)  Defendants have not responded or otherwise attempted to defend against Plaintiffs' Motion to date.

**II.      LEGAL STANDARD**

Federal Rule of Civil Procedure 55(b) "authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading."  *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535 (D.N.J. 2008).  Before the Court grants a motion for default judgment, however, it must ensure, *inter alia*, (1) that personal jurisdiction exists over the defendant and (2) "that entry of default under Rule 55(a) was appropriate."  *Gov't Emps. Ins. Co. v. Pennsauken Spine & Rehab P.C.*, No. 17-11727, 2018 WL 3727369, at *2 (D.N.J. Aug. 6, 2018).  Where the Court has jurisdiction, because the entry of default judgment prevents a decision on the merits, the mere fact of default does not entitle a plaintiff to judgment.  Rather, "[i]t is well settled in this Circuit that the entry of a default judgment is left primarily to the discretion of the district court."  *Hritz v. Woma Corp.*, 732 F.2d 1178, 1180 (3d Cir. 1984) (citing *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951)).

Once a party has defaulted, the "consequence of the entry of a default judgment is that 'the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'"  *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990) (quoting 10 C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure, § 2688 at 444 (2d ed. 1983)).  An entry of default judgment requires that the Court determine whether a sufficient cause of action has been stated "since a party in default does not admit mere conclusions of law."  *Chanel, Inc.*, 558 F. Supp. 2d at 535.  After a cause of action has been established, district courts must then determine whether the entry of default judgment would be proper by considering: (1) whether the party

subject to default has a meritorious defense, (2) whether there is prejudice to the plaintiff if default judgment is denied, and (3) whether the default was due to the defendant's culpable conduct. *See Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000); *Hritz*, 732 F.2d at 1181.

### III.   ANALYSIS

#### a.  Jurisdiction

"Before entering a default judgment as to a party 'that has not filed responsive pleadings, the district court has an affirmative duty to look into its jurisdiction both over the subject matter and the parties.'" *HICA Educ. Loan Corp. v. Surikov*, No. 14-1045, 2015 WL 273656, at *2 (D.N.J. Jan. 22, 2015) (internal citation omitted). For the reasons explained below, this Court has subject matter jurisdiction over this dispute and personal jurisdiction over Defendant Madan. However, this Court cannot conclude it maintains personal jurisdiction over Defendant Biotos.

#### i.   Subject Matter Jurisdiction

A district court has original jurisdiction over an action when there is diversity jurisdiction pursuant to 28 U.S.C. § 1332 or when there is federal question jurisdiction pursuant to 28 U.S.C. § 1331. Diversity jurisdiction exists when there is a dispute between citizens of different states alleging an amount in controversy in excess of $75,000. *See* 28 U.S.C. § 1332(a). There is complete diversity of citizenship here between Plaintiffs, citizens of South Korea and Oregon, and Defendants, citizens of North Carolina. (Compl. ¶¶ 1-2.) The amount in controversy requirement is satisfied, as Plaintiffs seek the full judgment amount of $300,000. (ECF 22; ECF 22-1; ECF 35-3.) Thus, the Court has subject matter jurisdiction over this action.

#### ii.   Personal Jurisdiction

"[W]hen a court is considering whether to enter a default judgment, it may dismiss an action *sua sponte* for lack of personal jurisdiction." *Mark IV Transp. & Logistics v. Lightning*

*Logistics, Inc.*, 705 F. App'x 103, 108 (internal citations omitted).  "[I]n contrast to the general rule that personal jurisdiction is waivable, a court considering a motion for a default judgment must *sua* sponte ensure that an exercise of personal jurisdiction over each defaulting defendant is proper."  *Id* (internal citations omitted).

"A district court sitting in diversity may assert personal jurisdiction over a nonresident defendant to the extent allowed under the law of the forum state."  *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009).  "New Jersey's long-arm statute allows the exercise of personal jurisdiction to the full extent permitted by the Constitution."  *Barrett v. Tri-Coast Pharmacy, Inc.*, 518 F. Supp. 3d 810, 821 (D.N.J. 2021).  The standard for a federal court sitting in diversity is therefore whether a "defendant has minimum contacts, such that the exercise of jurisdiction comports with traditional notions of fair play and substantial justice."  *Id.*; *Allaham v. Naddaf*, 635 F. App'x 32, 37 (3d Cir. 2015) (internal citations and quotations omitted).

Personal jurisdiction can be either general or specific.  *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994).  Courts have general jurisdiction when a defendant has "continuous and systematic" contacts with the forum state.  *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007).  Alternatively, Courts have specific jurisdiction when a plaintiff's claim arises from a defendant's actions within the forum state, such that the defendant could "reasonably anticipate being hailed into [the state's] court[s]."  *Vetrotex Certainteed Corp. v. Consol. Fiber Glass Prods. Co.*, 75 F.3d 147, 151 (3d Cir. 1996).

To satisfy the federal due process limits incorporated into New Jersey's long-arm statute, a defendant's minimum contacts are examined in relation "to the nature of the interactions and type of jurisdiction asserted."  *Telcordia Tech Inc. v. Telkom SA Ltd.*, 458 F.3d 172, 177 (3d Cir. 2006).  The Supreme Court has articulated three due process requirements for specific jurisdiction:

(1) the plaintiff must demonstrate that the defendant purposefully directed its activities at the forum; (2) the litigation must arise out of or relate to at least one of those activities; and (3) if the first two requirements are satisfied, a court may consider whether the exercise of jurisdiction otherwise "comports with fair play and substantial justice." *Barrett*, 518 F.Supp.3d at 821; *Celgene Corp. v. Distinct Pharma*, No. 2:17-CV-5303, 2019 WL 1220320, at *2 (D.N.J. Mar. 13, 2019). The Court retains personal jurisdiction over Defendants Madan, but not Defendant Biotos.

Here, Plaintiffs have pled a prima facie case of specific jurisdiction with respect to Defendant Madan. First, Plaintiffs effectively allege that Defendants purposefully directed their activities to New Jersey as Madan met with Young Moon, Plaintiffs' agent, in Newark. (Compl. ¶¶ 15, 17.) Second, the litigation arises out of Madan and Young Moon's New Jersey meeting, as that meeting led to the development of the business relationship between Generoath and Madan and Generoath's eventual hiring of Madan as its consultant responsible for starting its U.S.-based subsidiary. (Compl. ¶¶ 15, 17, 21-22.) "Third, the exercise of jurisdiction comports with 'fair play and substantial justice.'" *Barrett*, 518 F. Supp. 3d at 821. Relevant factors include "the burden on the defendant," "the forum State's interest in adjudicating the dispute," "the plaintiff's interest in obtaining convenient and effective relief," "the interstate judicial system's interest in obtaining the most efficient resolution of controversies," and the "shared interest of the several States in furthering fundamental substantive social policies." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985). These factors do not weigh against finding personal jurisdiction.

However, Plaintiffs lack personal jurisdiction over Defendant Biotos. Here, Plaintiffs have pled no facts suggesting that Biotos has any contacts, continuous or limited, with New Jersey. The Court therefore denies Plaintiffs' Motion for Default Judgment without prejudice with respect to

8

Defendant Biotos on the basis that it lacks personal jurisdiction. *See Hegrenes v. Nilson*, No. 16-02271, 2020 WL 42716, at *4 (D.N.J. Jan. 3, 2020) (denying plaintiffs' motion for default judgment without prejudice since the plaintiffs did not "set forth facts … demonstrating that each of the Defendants established constitutionally-sufficient minimum contacts with the forum"). The Court now proceeds with evaluating Plaintiffs' Motion only with respect to Defendant Madan.

### b. Service of Process

Second, a court must determine whether there is sufficient proof of service prior to entering default judgment. *Tr. of Int'l Union of Painters and Allied Trades Dist. Council 711 Health & Welfare Fund v. Danco Painting, LLC*, No. 17-05739, 2021 WL 3674353, at *3 (D.N.J. Aug. 19, 2021).

For service to be proper on an individual, Rule 4 requires service to be effectuated by a nonparty "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Plaintiffs provide the Court with an Affidavit of Service dated April 29, 2024, indicating that personal service was made by a nonparty to the action, Erin De La Cruz, who delivered a copy of the Summons and Complaint to Defendant Madan at his place of domicile in North Carolina. (ECF 3.) Thus, service of Defendant Madan was proper, and the Court is satisfied that it has jurisdiction to enter default judgment. *See Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds*, 250 F.R.D. 171, 177 (D.N.J. 2008).

### c. Entry of Default

Third, the Court must ensure that the entry of default under Rule 55(a) was appropriate. Rule 55(a) directs the Clerk of the Court to enter a party's default when the party "against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure

9

is shown by affidavit or otherwise." Fed. R. Civ. P. 55(a). Here, the Clerk appropriately issued an entry of default on May 22, 2024, after Defendants failed to timely respond to the Complaint. (ECF 5.) Despite the fact that Defendant Madan eventually filed a Motion to Dismiss (ECF 6), which this Court denied (ECF 10), Defendant continued to fail to defend by failing to pay the entire settlement by September 5, 2025, as per the Court's August 26, 2025 order. (ECF 34.) Accordingly, as per the Court's order granting leave to do, Plaintiffs appropriately filed this Motion for Default Judgment and Sanctions on September 12, 2025. (*Id.*; ECF 35.)

### d. Fitness

Further, "the Court must confirm that the defaulting parties are not infants or incompetent persons, or persons in military service exempted from default judgment." *Barrett*, 518 F. Supp. 3d at 822 (citing Fed. R. Civ. P. 55(b)(2)); 50 U.S.C.A. § 3931(b)(1).

Plaintiffs have not satisfied either requirement with respect to Defendant Madan. First, Plaintiffs have not alleged, upon information and belief, that Madan is not an infant nor incompetent. Second, Plaintiffs submit no affidavit containing facts regarding Madan's military service status. Accordingly, Plaintiffs' Motion for Default Judgment is denied without prejudice with respect to Defendant Madan. *See Branch Banking and Trust Company v. Paul's Gasoline Services, Inc.*, No. 19-17406, 2020 WL 3638244, at *2 (D.N.J. July 6, 2020) (denying a plaintiff's motion for default judgment where the plaintiff failed to allege that the defendants were not infants nor incompetent persons, and offered no evidence regarding the defendants' military status).

### e. Attorneys' Fees and Costs as Sanctions

Plaintiffs also request that the Court award attorneys' fees and costs in connection with their post-settlement enforcement and motion practice as a sanction on Defendants due to Defendants' noncompliance with this Court's orders to pay the settlement amount. (Mot. at 3.)

The Court denies, without prejudice, Plaintiffs' request for attorneys' fees and costs as sanctions at this time.

District courts have inherent power to sanction parties appearing before them for refusing to comply with their orders. *See Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 242 (3d Cir. 2007) (explaining that district courts have "very broad discretion" to "use sanctions where necessary") (internal quotations omitted); *Chambers v. Nasco, Inc.*, 501 U.S. 32, 42 n.8 ("The court generally may act *sua sponte* in imposing sanctions under the [Federal] Rules."). "For a court to impose attorney's fees as a sanction, a court must find that an attorney has '(1) multiplied proceedings; (2) in an unreasonable and vexatious manner; (3) thereby increasing the cost of the proceedings; and (4) doing so in bad faith or by intentional misconduct.'" *Kona Ice, Inc. v. Gonzalez*, No. 17-7757, 2019 WL 161506, at *3 (D.N.J. Jan 9, 2019) (quoting *Marino v. Usher*, 673 F. App'x 125, 131 (3d Cir. 2016)). However, "[b]ecause of their very potency, inherent powers must be exercised with restraint and discretion." *Chambers*, 501 U.S. 32, 44.

Plaintiffs argue that the Court should exercise its inherent authority to award attorneys' fees and costs as a sanction for Defendants' failure to comply with the Court's orders with respect to the settlement agreement. (*See* Mot. at 3.) However, this Court notes that courts in this District have "advise[d] against awarding attorney's fees as sanctions" where "[t]he Court already has, however, addressed Defendant's conduct by awarding Plaintiff default judgment." *See, e.g.*, *Gelab Cosmetics LLC v. Guangzhou Unique (Youyide) Tech. Co, Ltd.*, No. 22-7615, 2025 WL 3707042, at *3 (D.N.J. Dec. 22, 2025) (denying Plaintiff's request for attorney's fees as a sanction where the Court already awarded Plaintiff default judgment). This Court will therefore determine whether to award attorneys' fees and costs as a sanction if it reaches a final judgment if Plaintiffs file a renewed motion for default judgment.

11

## IV.     CONCLUSION

For the reasons stated above, Plaintiff's Motion for Default Judgment and Sanctions (ECF 35) is **DENIED WITHOUT PREJUDICE**.  Plaintiffs have 30 days to file a renewed motion explaining why this Court may exercise personal jurisdiction over Defendant Biotos, and why Defendant Madan is fit for default judgment.  In any renewed motion, Plaintiffs must provide evidentiary support for all damages claims, including attorneys' fees and costs. An appropriate order follows.


*/s/ Jamel K. Semper*
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:   Clerk
cc:     Cari Fais, U.S.M.J.
        Parties